UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

PHILIP M. MORIZIO and CAFÉ AL DENTE
OF OYSTER BAY, INC.,

          Plaintiffs,

    -against-

THE TOWN OF OYSTER BAY, FREDERICK
P. IPPOLITO, JOSEPH CIAMBRA, GARY
BLANCHARD, and JOSEPH CANGRO,

         Defendants.
---------------------------------------------------------------X

**COMPLAINT**

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ FEB 26 2014 ★
LONG ISLAND OFFICE

CV 14 1241

WEXLER, J.

Plaintiffs, Philip M. Morizio and Café Al Dente of Oyster Bay, Inc., by their attorney,

John W. Palmer, Esq., as and for their Complaint, allege as follows:

BROWN, M. J.

### INTRODUCTION

1.    This is a civil action pursuant to 42 U.S.C. 1983, for the deprivation of the

plaintiffs' procedural, and substantive, due process rights secured by the 14th Amendment,

and for the denial of equal protection of the laws; there are "Supplemental State Law

Claims."

2.    Under color of State Law, and pursuant to a conspiracy to shut down Café Al

Dente, the plaintiffs were denied their due process rights of notice and the right to be heard;

the means employed by the defendants were arbitrary, unreasonable, oppressive, and bore no

reasonable relation to the ends sought to be accomplished. The plaintiffs were subjected to

arbitrary, oppressive and irrational demands, which were intended to preclude the plaintiffs

from conducting the business of Café Al Dente at Two Spring Street, Oyster Bay, New York.

3.      On September 16, 2013, Café Al Dente, an Italian restaurant, which had occupied 2 Spring Street, Oyster Bay for twenty years, was unlawfully "padlocked" by the defendants, under color of State Law.  This unlawful action was accompanied by falsehoods, and by arbitrary, confiscatory, and oppressive demands, intended to prevent Café Al Dente of Oyster Bay, Inc. from conducting its restaurant at 2 Spring Street, Oyster Bay, New York.  These intentional acts under color of State Law, resulted in the destruction of the twenty year business, of Café Al Dente, at 2 Spring Street.  The Defendants Conspirators schemed to facilitate their "hidden agenda."

4.      The plaintiffs seek compensatory damages, special damages, punitive damages, and a reasonable attorney fee pursuant to 42 U.S.C. 1988(b).

5.      This civil action asserts "Supplemental State Law Claims."

## THE PARTIES

6.       Plaintiff Philip M. Morizio, is the owner of Café Al Dente of Oyster Bay Inc..

7.       Plaintiff Café Al Dente of Oyster Bay, Inc., (hereafter, "Café Al Dente") is a New York corporation, which conducted an Italian restaurant, for twenty years, at 2 Spring Street, Oyster Bay, across from Town Hall.

8.      Since January 1, 2009, Defendant Frederick P. Ippolito, has been the Commissioner of the Department of Planning and Development of the Town of Oyster Bay. Frederick R. Ippolito is being sued in his individual capacity, and not in his official capacity.

9.      Defendant Gary Blanchard is a building inspector in the Department of Planning and Development of the Town of Oyster Bay; he is being sued in his individual capacity.

10.      Defendant Joseph Ciambra is a building inspector in the Department of Planning and Development of the Town of Oyster Bay; he is being sued in his individual capacity.

11.     Defendant Joseph Cangro is a building inspector in the Department of Planning and Development of the Town of Oyster Bay; he is being sued in his individual capacity.

12.     The Town of Oyster Bay is a municipal corporation, duly incorporated under the laws of New York.

13.     The defendants who are Town officials and employees, are being sued in their individual capacities rather than in their official capacities.

**JURISDICTION**

14.     This action, pursuant to 42 U.S.C. 1983, seeks damages for violations of the 14th Amendment of the Constitution of the United States of America, for deprivation of the plaintiff's substantive, and procedural, due process rights, and the denial of equal protection of the laws.

15.     This action is also brought pursuant to 42 U.S.C.A. Section 1331. This action arises under the Constitution of the United States and the 14th Amendment thereto.

16.     This civil action asserts Supplemental State Law claims, and jurisdiction pursuant to 28 U.S.C.A. Sec. 1367.

17.     This civil action exceeds all jurisdictional minimums.

18.     This civil action has been commenced within the applicable Statute of Limitations for a civil action, which is three years, pursuant to 42 U.S.C. 1983, and for deprivation of due process, procedural and substantive, and for denial of equal protection of the Law. It has been timely commenced within the applicable statute of limitations for Supplemental State Law Claims, which is one year and 90 days from the happening of the event upon which this action is predicated.

19. The acts complained of occurred within the venue jurisdiction of the Federal District Court for the Eastern District of New York.

## SUPPLEMENTAL STATE LAW CLAIMS

20. On November 12, 2013, a Notice of Claim was duly, and timely, served, and filed, upon the defendants, pursuant to the General Municipal Law of the State of New York.

21. At least 30 days have elapsed since the service and filing of the Notice of Claims, and adjustment or payment thereof has been neglected or refused.

22. The hearing, pursuant to 50H of the General Municipal Law of New York State, was not demanded by the Town of Oyster Bay, within 90 days of the service and filing of the Notice of Claim.

23. This action is duly commenced within one year and 90 days from the happening of the event upon which the claim is based.

## JURY DEMAND

24. The plaintiffs demand trial by Jury pursuant to the 7th Amendment of the United States Constitution. This controversy exceeds twenty dollars.

## STATEMENT OF CLAIM

25. This civil action seeks to impose liability upon the Defendants for their individual acts, and for their participation in a "conspiracy" to "shutdown" Café Al Dente.

## BACKGROUND

## PHILIP M. MORIZIO

26. Philip M. Morizio studied computer science at Queens College, and worked for I.B.M.

27.     Philip M. Morizio received "classic" training as a chef at the Algonquin Hotel, the Intercontinental Hotel and the Mayflower Hotel, in New York City.

28.     For 20 years, Philip M. Morizio has been an owner of, Café Al Dente, at 2 Spring Street, Oyster Bay, New York, across from Town Hall.

### FREDERICK P. IPPOLITO

29.     On January 1, 2009, after an absence of 21 years, Frederick P. Ippolito was returned to his former position, as the Commissioner of the Department of Planning and Development of the Town of Oyster Bay.

30.     One of Frederick P. Ippolito's commercial interests, during the 21-year interlude, was ownership of an Italian restaurant.

31.     Frederick P. Ippolito is being sued in his individual capacity, and not in his official capacity.

### JOSEPH CIAMBRA

32.     Joseph Ciambra, a building inspector, is being sued in his individual capacity, and not in his official capacity.

### GARY BLANCHARD

33.     Gary Blanchard, a building inspector, is being sued in his individual capacity, and not in his official capacity.

### JOSEPH CANGRO

34.     Joseph Cangro, a building inspector for the Town of Oyster Bay,  is being sued in his individual capacity, and not in his official capacity.

## PETER CAPONE

35.    Peter Capone is an architect. He is not a party to this action. In 1987, Peter Capone purchased 2 Spring Street, Oyster Bay, New York, through his corporation Rial Realty Corp.. In 2004, Rial Realty Corp. sold 2 Spring Street.    Café Al Dente leased the first floor, the Basement Preparation Room, and the Courtyard, from Rial Realty Corp.. Prior to the 1987 purchase of 2 Spring Street, the first floor, of 2 Spring Street, was occupied by a "floral shop."

## THE 1993 SEARCH FOR A LOCATION FOR CAFÉ AL DENTE

36.    2 Spring Street, Oyster Bay, New York, was built in 1925. It is a two-story brick building. A couple, with their child, reside in the second floor apartment. Café Al Dente occupied the first floor, Basement Preparation Room, and the Courtyard. 2 Spring Street is located on the Southwest corner of the intersection of Spring Street and Shore Avenue in Oyster Bay, New York, across from Town Hall. The tax map designation is Section 27, Block 44, Lot 74.

37.    In 1993, Philip M. Morizio embarked upon a "search" for a location to establish Café Al Dente.

38.    2 Spring Street, Oyster Bay, was the 45th location evaluated by Philip M. Morizio.

39.    In 1993, when Philip M. Morizio decided on Two Spring Street, there was a restaurant for sale at Two Spring Street; the restaurant was "Christine's, which was owned by R.T.M. Deli, Inc..

40.    Café Al Dente purchased "Christine's, and entered into a lease with Rial Realty Corp., the owner of Two Spring Street.

41.     Philip M. Morizio chose 2 Spring Street because of its proximity to Town Hall, and because it was a "turnkey" circumstance.  He appreciated the "clean" and "neat "basement preparation room."

42.     Café Al Dente merely had to "turn the key" to commence operation at 2 Spring Street.

43.     Café Al Dente did not have to alter or construct any aspect of the restaurant's first floor, or the "basement preparation room", as it was a "turnkey" circumstance.

44.     The interior first floor, and the "basement preparation room", at 2 Spring Street, were exactly the same on September 16, 2013, the "padlocking" date, as they were when Christine's conducted business, in 1992.

<u>**CAFÉ AL DENTE**</u>

45.     Café Al Dente commenced operations, at 2 Spring Street, Oyster Bay, on April 1, 1994.

46.     75% of Café Al Dente's luncheon business was Town Hall employees, as "sit down", or "takeout", customers.

47.     The defendants were customers of Café Al Dente, until, in 2012, Frederick P. Ippolito forbade the employees of the Department of Planning and Development from patronizing Café Al Dente.

48.     For twenty years, at 2 Spring Street, Café Al Dente passed inspections by the Nassau County Fire Marshall's Office, and the Nassau County Department of Health.

49.     In 2013, Café Al Dente passed two inspections by the Nassau County Fire Marshall's office, on April 30, 2013 and August 30, 2013.

50.     On July 29, 2013, Café Al Dente passed an inspection by the Nassau County Department of Health, receiving the Health Department's highest rating.

51.     The employees, of the Town of Oyster Bay, held office parties, birthday parties and family celebrations, at Café Al Dente.

### THE HISTORY OF RESTAURANTS AT 2 SPRING STREET, OYSTER BAY

52.     In 1987, 2 Spring Street was purchased by Rial Realty Corp.; it was sold by Rial Realty Corp., in 2004.

53.     The Chief Executive Officer, and owner, of Rial Realty Corp. is architect, Peter Capone.

54.     2 Spring Street is a two-story brick building, constructed in 1925; 2 Spring Street is located on the Southwest corner of Shore Avenue and Spring Street (Sec-27, Block 44-Lot 74).

55.     Rial Realty Corp., received Certificate of Occupancy No. A21188, dated February 26, 1990, for 2 Spring Street.

56.     Certificate No. A21188, issued to Rial Realty Corp. for 2 Spring Street, was for the "interior alterations of the restaurant, first floor only, 40' x 41.83' irregular".

57.     In 1990, Rial Realty Corp. received two "Certificates of Approval of Plumbing", numbers G6440 and G6530, from the Department of Planning and Development of the Town of Oyster Bay, for two Spring Street. The "Certificates of Approval of Plumbing" were for interior alterations on the first floor of 2 Spring Street, Oyster Bay. This was pursuant to Building Permit No. L14335, issued November 14, 1989; Certificate of Occupancy A21188, was issued, February 26, 1990.

58.     Rial Realty Corp. received electrical underwriter's Certificate of Electrical Approval, NBFU No. 113 595, pursuant to Building Permit L14335, for 2 Spring Street.

59.     Building Permit No. L14335, was the predicate for the issuance of Certificate of Occupancy No. A21188, dated February 26, 1990, for 2 Spring Street.

60.     The Town of Oyster Bay "Approved the Plan" for the "Gazeebo Restaurant", on November 14, 1989, under  Building Permit No. L14335, for 2 Spring Street.

61.     The Town of Oyster Bay approved the amended plan for Building Permit No. L14335, on February 6, 1990, for the interior construction at 2 Spring Street.

62.      The amended plan, approved February 6, 1990, by the Town of Oyster Bay, under Building Permit L14335, authorized a "single" handicap accessible bathroom for the first floor at 2 Spring Street.

63.     At 2 Spring Street, the "Gazebo" Restaurant conducted business under Certificate of Occupancy No. A21188, dated February 26, 1990.

64.     There are up to 14 inspections necessary before a Certificate of Occupancy may be issued.  The inspections include approvals of electrical and plumbing installations.

65.     Certificates of Approval of the Plumbing, No. 6530 and No. G6440, were issued to Rial Realty Corp, pursuant to Building Permit L14335 for 2 Spring Street.

66.     On August 13, 1992, the Town of Oyster Bay approved a plan, pursuant to Building Permit No. L30017, for "the first floor" and "basement preparation room", at 2 Spring Street.

67.     Building Permit No. 30017 was issued to Rial Realty Corp., for 2 Spring Street, to perform construction on "Christine's" Restaurant.

9

68.     The "Approved Plan", for 2 Spring Street, pursuant to Building Permit No. L30017, displayed the "Basement Preparation Room."

69.     A Certificate of Occupancy No. A27651, dated October 16, 1992, was issued to Rial Realty Corp., pursuant to Building Permit No. L30017, for 2 Spring Street.

70.     Certificate of Occupancy, No. A27651, was issued for the "interior alterations of Christine's", at 2 Spring Street.

71.     Christine's followed  "The Gazebo", at 2 Spring Street.

72.     The "Plan", approved by the Town of Oyster Bay, on August 13, 1992, approved a "single handicap" accessible bathroom, and a "basement preparation room", for 2 Spring Street.

73.     Since October 16, 1992, there have been "no" alterations to the interior of the first floor, or "basement preparation room, at 2 Spring Street.

74.     As of September 16, 2013, the interior configuration of Café Al Dente was the same, as the plan approved by the Town of Oyster Bay, on August 13, 1992, pursuant to Building Permit No. L30017, for 2 Spring Street.

75.      The "basement preparation room", at 2 Spring Street, was approved by the Town of Oyster Bay, on August 13, 1992.

76.      For twenty years, the "basement preparation room" has been inspected by the Nassau County Department of Health.  Café Al Dente passed the inspections.

77.      For twenty years, the "basement preparation room" has been inspected by the Nassau County First Marshall's office.  Café Al Dente passed the inspections.

78.      Nevertheless, Frederick Ippolito has arbitrarily demanded that the "basement preparation room" be relocated to the first floor, as an ostensible condition to the

continuation of Café Al Dente, at 2 Spring Street.  This was an "overt act", in furtherance of the defendants conspirators' scheme, to "shut down" Café Al Dente; as a further overt act, the defendants have suppressed the aforesaid certificates and approvals.

79.     Upon information and belief, the Town of Oyster Bay, issued a Certificate of Occupancy to Rial Realty Corp. in 1993, for the "first floor", and "the basement preparation room", at 2 Spring Street.

80.     No structural alteration, or design changes, have been made to the interior of 2 Spring Street, by Café Al Dente.  The first floor and "basement preparation room" exist, to date, exactly as displayed on the "Plan", approved by the Town of Oyster Bay, on August 13, 1992.

81.     Café Al Dente has not performed any construction, or alterations to the first floor, or the "basement preparation room", or to any part of the interior, at 2 Spring Street.

82.     The plans approved by the Town of Oyster Bay, in 1990, and 1992, approved a single handicap accessible bathroom.  Nonetheless, the Defendants have demanded that a second handicap accessible bathroom be constructed.  This is a overt act in furtherance of the conspiracy to "shut down" Café Al Dente.

83.     The Certificates of Occupancy certify that the construction was accomplished in accordance with the approved plans, and building permits.

### FREDERICK P. IPPOLITO FORBADE EMPLOYEES OF THE DEPARTMENT OF PLANNING AND DEVELOPMENT TO PATRONIZE CAFÉ AL DENTE

84.     In 2012, Philip M. Morizio observed that employees of the Department of Planning and Development, of the Town of Oyster Bay, who had been regulars, at Café Al Dente, no longer patronized Café Al Dente.

11

85.     In 2013, Philip M. Morizio was informed that Frederick P. Ippolito had forbade, the employees of the Department of Planning and Development, from patronizing Café Al Dente.

### THE MEETING WITH FREDERICK P. IPPOLITO, ON 5/24/2012

86.     On May 24, 2012, Philip M. Morizio was summoned to the office of Frederick P. Ippolito.

87.     Frederick P. Ippolito informed Philip M. Morizio that Café Al Dente, and Philip M. Morizio, were finished doing business in Oyster Bay.

88.     Upon hearing this, Philip M. Morizio felt ill.

89.     Frederick P. Ippolito suggested that Café Al Dente should relocate to the site of a closed restaurant.

90.     Philip M. Morizio explained that it would cost $200,000 to open the closed restaurant site, that was suggested by Frederick P. Ippolito.

91.     Philip M. Morizio suggested, to Frederick P. Ippolito, that since an awning over Café Al Dente's courtyard was the only issue, why couldn't Café Al Dente simply apply for an awning permit?

92.     Frederick P. Ippolito appeared to agree, and suggested a lawyer that Café Al Dente should retain to expedite future dealings with the Department of Planning and Development.

93.     The next day, May 25, 2012, Building Inspector, James Baudille, appeared at Café Al Dente, and informed Philip M. Morizio that Frederick P. Ippolito HAD directed him to "write up" Philip M. Morizio, for everything he could.

94.     Philip M. Morizio appeared, *pro se*, in the District Court of Nassau County , ten times, between May of 2012 and June 3, 2013.  None of the ostensible violations alleged a violation of Article 96 ,"Dangerous Buildings", of the Code of the Town of Oyster Bay.

95.     In May of 2012, there were no violations, against Café Al Dente, alleging a "dangerous building or structure."

96.     On June 3, 2013, there was a disposition of the "ostensible" violations, issued by James Baudville in May of 2012.

### THE MEETING WITH FREDERICK P. IPPOLITO, IN APRIL OF 2013

97.     In April of 2013, Philip M. Morizio was summoned to Frederick P. Ippolito's office.

98.     Frederick P. Ippolito informed Philip M. Morizio that he no longer wanted Café Al Dente to seek a permit for the awning that covered the courtyard.

99.     Frederick P. Ippolito wanted Café Al Dente to build a "permanent enclosure" in the courtyard.

100.    Frederick M. Ippolito explained that he had a contractor who would build the "permanent enclosure", for $8,000; he guaranteed the approval of the Zoning Board of Appeals, and he recommended a lawyer.

101.    In April of 2013, Philip M. Morizio, in response to the suggestion of Frederick P. Ippolito that a permanent structure be constructed in the courtyard of Café Al Dente, inquired of the owner of 2 Spring Street, whether that was acceptable.

102.    The owner of 2 Spring Street was against a permanent structure, as it would raise taxes.  This was conveyed to Frederick P. Ippolito.

13

103.    Philip M. Morizio was informed, that Frederick P. Ippolito said that he would "shut down" Café Dente, if he did not get his way.

## THE TV FOOD NETWORK

104.    On July 26, 2013, Philip M. Morizio was approached by a production company to film a show for the TV Food Network, featuring Café Al Dente.

105.    The "Show" would involve a renovation of Café Al Dente, at the production company's expense.

106.    The "Show" would appear "nationwide".

107.    After several meetings, with producers, designers and contractors, the "Show's" representatives desired to meet with Frederick P. Ippolito, to expedite the necessary work permits, and approvals.

108.    Frederick P. Ippolito refused to meet with the "Show's" representatives.

109.    On August 9, 2013, the owner of the production company informed Philip M. Morizio that he needed approval from the Town of Oyster Bay, to begin work on Café Al Dente; he explained that, once they began construction, and filming, they would be spending tens of thousands a day.

110.    Philip M. Morizio became frustrated with the lack of cooperation of Frederick P. Ippolito, and being under pressure from the producers to obtain approvals, Philip M. Morizio contacted the office of the Town of Oyster Bay Supervisor, John Venditto.

111.    Philip M. Morizio spoke to the Supervisor's Assistant.

112.    The Supervisor's Assistant said she would assist Café Al Dente.

14

113.    On August 12, 2013, Philip M. Morizio again contacted the Supervisor's office. The Supervisor's assistant said, she spoke to the Department of Planning and Development, and urged them to do whatever is necessary to facilitate the television production.

114.    Philip M. Morizio continued to receive pressure from the producers.

115.    The producers demanded an answer, concerning Frederick P. Ippolito's cooperation, by the end of business, on August 12, 2013.

116.    Philip M. Morizio received an anonymous phone call, that Frederick P. Ippolito was angry that Philip M. Morizio had contacted Supervisor Venditto's office, and that Frederick P. Ippolito was planing to "close down" Café Al Dente.

### FREDERICK P. IPPOLITO RETALIATES

117.    On August 13, 2013, Federick P. Ippolito dispatched Gary Blanchard, Joseph Ciambra, and Joseph Cangro, to Café Al Dente, to write up Café Al Dente, and to file, with the Department of Planning and Development, an "Emergency Safeguard Notification", as a "lead-in" to "shutting down", Café Al Dente .

118.    Gary Blanchard asked Philip M. Morizio, "you know what this is about, right?"

119.    Philip M. Morizio replied that he did not.

120.    Gary Blanchard said, "Fred is mad that you went over his head to Supervisor Venditto's office."

121.    Philip M. Morizio replied, that he had been given "the opportunity of a lifetime", and this "Show" would benefit Café Al Dente, and the Town of Oyster Bay.

122.    Philip M. Morizio asked Gary Blanchard, "why is Fred doing this? I tried to reach Fred four times, and Fred did not respond."

123.     Philip M. Morizio said the Show's producers were pressuring him, and he sought assistance from the Supervisor.

124.     Gary Blanchard replied, "Fred is the gun and I am the bullet."

125.     Joseph Cangro uttered, "Maybe you should have sent the Commissioner some meatballs."

126.     Joseph Ciambra chimed in, "Yeah! And those meatballs better be fresh."

127.     Joseph Ciambra, and Joseph Cangro, laughed for five minutes over their "joke".

128.     Philip M. Morizio was served with a summons for Café Al Dente to appear in the District Court of Nassau County, on September 16, 2013, the date that Café Al Dente was "padlocked", without "due process". Café Al Dente was "padlocked" before it was arraigned on the violations charged against it. There was no "notice" or "hearing", prior to the "padlocking." None of the charges returnable on September 16, 2013, in the District Court, charged a violation of Article 96 of the Town Code, entitled "Dangerous Buildings."

129.     The filing of the "Emergency Safeguard Notification", by Gary Blanchard, Joseph Ciambra and Joseph Cangro, was an "over act", by the Defendants, in their scheme to "shut down", Café Al Dente.

130.     The fallacious, and concocted, "Emergency Safeguard Notifications", dated August 13, 2013, and September 11, 2013, were utilized by the defendants conspirators, as "cornerstones", in their "plot" to "shut down" Café Al Dente.

131.     "The Town of Oyster Bay Building Division Emergency Safeguard Notification", dated, August 13, 2013, falsely alleged as follows:

132.1.          It was alleged: "That the "Electric work not to code and exposed." Plaintiffs' response: This was false, as the electrical installation was inspected, and approved,

by the Town of Oyster Bay per Electrical Underwriters Approval Certificate Nos. NBTU113595, and N251742, and per Certificates of Occupancy, numbered A21188, and A27651. The Defendants, as an "overt act", in furtherance of their conspiracy to "shut down" Café Al Dente, suppressed the Certificates of Approval of the Electrical installation; there were no exposed wires."

132.2.    It was alleged that: "Remove old stack". Plaintiffs' response: There is nothing dangerous about the "stack." It is an inert hollow galvanized steel tube venting fresh air into the restaurant.

132.3.    It was alleged that: "Exit doors must meet Egress Code." Plaintiffs' response: The Egress doors were approved by the Town of Oyster Bay on plans approved, on February 6, 1990 and August 13, 1992, and by Certificates of Occupancy numbered A21188, and A27651. The exit doors, agress, and emergency exit lights were approved by Nassau County's Fire Marshall, on April 30, 2013.

132.4.    It was alleged that: "Kneewall needs permit." Plaintiffs' response: Fence was approved, on plans, dated February 6, 19900 and August 13, 1992, and by Certificates of Occupancy numbered A21188, and A27651.

132.5.    It was alleged that: "Need UL for all electrical work." Plaintiffs' response:    The Defendants suppressed electrical approval certificates, numbered N113595, and N251742, and Certificates of Occupancy numbered A21188 and A37651.

132.6.    It was alleged that: "Rear Canopy" with no permit needs flame spread rating." Plaintiffs' response:    The canopy had a flame spread rating for the "life" of the canopy. An application for the canopy permit had been submitted to the Department

17

of Planning and Development, in 2012.  The Department of Planning and Development "sat on" the application.

132.7.    It was alleged that:  "Need fire door to boiler."    Plaintiffs' response:   Boiler room door was approved by the Town of Oyster Bay, pursuant to Certificates of Occupancy, numbered A21188, and A27651.  The door to the boiler room is a metal fire door.

132.8.    It was alleged that  "Need to remove all future T's for gas lines." Plaintiffs' response: It was not planned to install any future T's.

132.9.    It was alleged that:  "Ansul system must be tagged" current." Plaintiffs' response:  The, "State of Art", fire suppression system was tested, approved, and tagged, on August 30, 2013.  The State of Art suppression system was installed in November of 2011.  The delay in tagging it was due to a backlog created by the hurricanes.  The system was fully operational from November of 2011.

132.10.    It was alleged that:  "Boiler room must be vented to code." Plaintiffs' response:    Boiler room is vented to code, and was approved by the Town of Oyster Bay pursuant to Certificate of Occupancy numbered A21188.

132.11.    It was alleged that:  "No hole breaches or void in kitchen wall". Plaintiffs' response:  Vent in kitchen wall approximately 8" x 10" was to be covered on September 18, 2013.  Café Al Dente was "padlocked", without due process", on September 16, 2013.

132.12.    It was alleged that:  "Basement ceiling tiles are missing, stained from water leaks."  Plaintiffs' response: 10 basement, ceiling tiles were ordered from Home

Depot; they were water and mildew resistant. They were received the day Café Al Dente was "padlocked."

132.13.     It was charged that: "Must have emergency lights to code." Plaintiffs' response: On April 30, 2013, the exit emergency lights were tested, and approved by the Nassau County Fire Marshall's office. The Fire Marshall's office, of Nassau County, is the ultimate authority, on this subject.

132.14.     It was alleged that: "Special sprinkler must be in working order and valve open." Plaintiffs' response:    Special sprinkler system in kitchen and dining room of Café Al Dente was in working order and the valve was open.

132.15.     It was alleged that: "Basement has prep kitchen with sinks. Must file for all applicable permits for Certificates of Occupancy to be issued. Plaintiffs' response: The defendants conspirators suppressed the approved plan, by the Town of Oyster Bay, dated August 13, 1992, which approved the "Basement Preparation Room" exactly as it existed on August 13, 2013. The Defendant conspirators have suppressed Certificates of Occupancy, numbered A27651, and the Plumbing Approval Certificate, numbered G11180. This is part of the defendants' "plot" to demand arbitrary, unnecessary and unreasonable requirements. These overt acts were in furtherance of the Defendants'' conspiracy to "shut down" Café Al Dente.

132.     On August 23, 2013, Joseph Ciambra swore, to a District Court information stating, that none of these Certificates of Occupancy, plans, or approvals existed, in the Section, Lot and Block file, for 2 Spring Street, in the files maintained by the Department of Planning and Development of the Town of Oyster Bay. This sworn court information, dated August 23, 2013, was an overt act in furtherance of the "plot" to "shut down" Café Al Dente.

19

Café Al Dente was "shut down", before it was arraigned on Joseph Ciambra's concocted court information.

133.    Joseph Cangro also submitted a sworn fallacious court information to the District Court of Nassau County, also stating that these Certificates of Occupancy, Approvals and Building Permits did not exist. This was an overt act in furtherance of the conspiracy to "shut down" Café Al Dente.

134.    The summonses were returnable on September 16, 2013, in the District Court of Nassau County. Café Al Dente was "padlocked" before it was arraigned on the ostensible violations, without notice or a hearing.

### THE "CONCOCTED" "EMERGENCY SAFEGUARD NOTIFICATION" DATED, SEPTEMBER 11, 2013

135.    Gary Blanchard, as an overt act in furtherance of the conspiracy to "shutdown" Café Al Dente, filed a false and concocted, "Emergency Safeguard Notification", with his office. If plaintiffs had not been deprived of their due process Rights of Notice and their right to be heard, they would have proved the efficacy of the following:

        a.    Building Permits Nos. L11335 and L30017;

        b.    Plumbing Approval No. G11180 and G6440;

        c.    Approved plans, dated February 6, 1990 and August 13, 1992;

        d.    Certificates of Electrical Approval Numbered: NBFU113595 and N251742;

        e.    Certificates of Occupancy Nos. A21188 and A27651.

136.1.    It was alleged that: "Unlawful tenancies/Certificates of Occupancy". Plaintiffs' response: If plaintiffs had not been denied their due process, Rights of Notice and the Right to Be Heard, the Plaintiff would have established the efficacy of

20

Certificates of Occupancy numbered A21188 and A27651, and the "turnkey" circumstance of Café Al Dente's tenancy.

        136.2.      It was alleged that: "Handicap Requirements must comply with Town codes." Plaintiffs' response:    A single handicap bathroom was approved by the Town of Oyster Bay, on plans dated February 6, 1990, and August 13, 1992 and by Certificates of Occupancy numbered A21188 and A27651. The restaurants in the Hamlet of Oyster Bay do not have two fully accessible handicap bathrooms.

        136.3.      It was alleged that:   Violations of NYS Health Department requirements. Plaintiffs' response:   Café Al Dente was inspected by the Nassau County Department of Health on July 29, 2013;  Café Al Dente received an "A" rating; the highest rating.  On July 29, 2013, the Nassau County Health Department had the ultimate "Health" jurisdiction over Café Al Dente. There were no critical violations of the New York State Health Department requirements.

        136.4.      It was alleged that: "Dangerous electrical/plumbing". Plaintiffs' response:   The electric system was approved by electrical Certificates of Approval numbered NBFY113595 and N1251742. The plumbing was approved by Certificates of Approval numbered G11180, G6440, and G6530. The "approvals" have been suppressed by the Defendants, as "overt" acts in furtherance of their conspiracy.

        136.      If plaintiffs had not been denied their due process Rights of Notice and the Right to be Heard, they would have proven that the "padlocking", and destruction of Café Al Dente, at 2 Spring Street, was unlawful.

        137.      The "padlocking", of September 16, 20013, was followed by arbitrary, confiscatory, and unreasonable demands, that made continuing Café Al Dente's restaurant, at

2 Spring Street, impossible.  Further, it was obvious that the defendants, who were not acting in "good faith", were not going to permit Café Al Dente to continue, at 2 Spring Street.

138.    The defendants conspirators were determined to force Café Al Dente out of 2 Spring Street, to facilitate their "hidden agenda."

### THE PADLOCKING ON SEPTEMBER 16, 2013

139.    On September 16, 2013, the defendant, Joseph Ciambra appeared at Café Al Dente; he informed Philip M. Morizio that Frederick P. Ippolito was closing down Café Al Dente.

140.    Joseph Ciambra said he was just waiting for the "hardware team" to arrive, and "padlock" the restaurant.

141.    The "hardware team" arrived, and "padlocked" Café Al Dente.

142.    The "padlocking" was the worst thing that had ever happened to Philip M. Morizio; he thought he would suffer a heart attack.

### THE REJECTION OF FREDERICK P. IPPOLITO'S
### CLASSIFICATION OF 2 SPRING STREET AS A DANGEROUS BUILDING

143.    On September 22, 2013, Philip M. Morizio, as President of Café Al Dente, and individually, duly, and timely, served, pursuant to Article 96 of the Town Code, a "rejection" of Frederick P. Ippolito's classification of 2 Spring Street, as a "dangerous building."

## MUNICIPAL LIABILITY

## FREDERICK P. IPPOLITO, AS THE COMMISSIONER OF THE DEPARTMENT OF PLANNING AND DEVELOPMENT, IS A FINAL POLICY-MAKER

144.    Upon information and belief, Frederick P. Ippolito, and the Department of Planning and Development of the Town of Oyster Bay, New York, functioned autonomously.

145.    Upon information and belief, neither the Supervisor of the Town of Oyster Bay, or the Town Board, exercise any supervision, or control, over Frederick P. Ippolito, of the Department of Planning and Development.

146.    Pursuant to Article 96 of the Town Code, the plaintiffs petitioned the Town Board of Oyster Bay for the withdrawal of the classification of 2 Spring Street, as a "dangerous building or structure"; the Plaintiffs' petition for a "hearing", before the Town Board, pursuant to the Town Code was "simply" ignored. The Town Board did not respond, in any way.  The Town of Oyster Bay has delegated, to Frederick P. Ippolito "final decision and "policy making authority"; so that Frederick P. Ippolito's decisions and acts, can be said to be the decisions, and acts of the Town of Oyster Bay.

147.    Frederick P. Ippolito caused injury to the plaintiffs by ordering the "padlocking", and arbitrary, and unreasonable demands.

148.    By ignoring the Plaintiffs' timely, and duly, authorized petition to the Town Board of Oyster Bay, to withdraw the classification of 2 Spring Street as "a dangerous building or structure", the Town of Oyster Bay confirmed that the decisions and actions of Frederick P. Ippolito were "final".

149.     Frederick P. Ippolito's "final" decision caused the deprivation of the Plaintiffs' Federally protected rights, under color of state action, and without due process.

150.     The Town of Oyster Bay is responsible for the actions and decisions of Frederick P. Ippolito, as he possessed "final policy making authority."

151.     The Defendants' Conspirators' unconstitutional acts were caused by a policy, or practice, established by the Town of Oyster Bay, to give Frederick P. Ippolito final decision making authority.

### PETITION THE TOWN BOARD OF OYSTER BAY TO WITHDRAW THE CLASSIFICATION OF 2 SPRING STREET AS "A DANGEROUS BUILDING AND STRUCTURE"

152.     On September 23, 2013, the plaintiffs duly and timely filed a Petition TO THE Town Board requesting that the designation of 2 Spring Street as a "dangerous building" be withdrawn.  This was a Petition authorized by Article 96 of the Town Code.

153.     The Petition was filed pursuant to Section 96.10 of the Code of the Town of Oyster Bay.

154.     The Town Board was required to schedule a hearing, before the Town Board, within 14 days of the receipt of the Petition.

155.     The Town Board of Oyster Bay ignored the Petition, and did not communicate, in any way, with the Petitioners.

156.     The Town of Oyster Bay ignored its Town Code, and was completely indifferent to Petitioner's plight.

157.     The Town of Oyster Bay made it "crystal clear" that there is no "going over" Frederick P. Ippolito's authority within the Town of Oyster Bay's government.

## UNREASONABLE AND ARBITRARY
## DEMANDS MADE BY FREDERICK P. IPPOLITO

158.    Post "padlocking", the unreasonable, and arbitrary, demands of Frederick P. Ippolito, and the Defendants, were:

1.    Café Al Dente had to apply for Certificates of Occupancy "for each" room in the restaurant.  This would include up to 14 inspections, and approvals, for each room.  It would have required a lawyer, expediters and architects.

2.    The "basement preparation room" would have to be moved to the first floor, after 20 years.  This would result in considerable expense, delay, and the loss of valuable space.  The "overhead" while closed would be $4,000 per week.  The Defendants would have torpedoed the "process."

3.    The plumbing and electrical systems would have to be reconstructed, and Certificates of Approvals obtained.  The defendants have "suppressed" the Certificates of Approvals.  This would have involved considerable expense, and delay.

4.    Restaurants in the Hamlet of Oyster Bay do not have two handicapped accessible bathrooms, yet it was demanded that Café Al Dente have two.

5.    The Defendant Conspirators would have obstructed the Plaintiffs in every way possible.  The arbitrary, unreasonable demands would accelerate.

6.    New plans would have to be prepared and approved by the Defendants, at considerable cost.

7.    The overhead of Café Al Dente, during this hopeless ordeal would have been $4,000 per week, plus significant expenses.  It was obvious that the Defendants Conspirators were not acting in good faith, and would prevent Café Al Dente from continuing at 2 Spring Street.

159.    The deprivation of the Plaintiff's 14th Amendment rights, was done maliciously, wantonly and willfully.

160.    The Co-conspirators would have rendered impossible, any attempt by Café Al Dente to continue at 2 Spring Street.

161.    2 Spring Street is not a "dangerous" building or structure.  Since the "shutdown" of Café Al Dente, on September 16, 2013, a couple, with their child, have continued to reside in the "second floor apartment, which is located over Café Al Dente.

## MUNICIPAL LIABILITY RE:  RECORDS

162.    Upon information and belief, the Town of Oyster Bay was negligent in not safeguarding, maintaining, and preserving, its records pertaining to 2 Spring Street, Oyster Bay, New York, Tax Map Designation:  Section 27, Block 44, Lot 74, including, but not limited to, Certificates of Occupancy, Building permits, plumbing approvals, electrical approvals, approved plans, applications, inspections, and the like.

163.    Upon information and belief, the Department of Planning and Development maintained the records of 2 Spring Street in a section, block, and lot file, and in a Certificate of Occupancy room.

164.    Upon information and belief, there were no "back-up" records, or recordings, of the documents pertaining to 2 Spring Street, Oyster Bay, New York.

165.    Upon information and belief, the documents pertaining to 2 Spring Street were removed from the files of the Department of Planning and Development, by the Defendants' conspirators, as an "overt" act, in furtherance of the conspiracy to "shutdown" Café Al Dente.

## RELIEF SOUGHT

166.    Compensatory damages, special damages, and punitive damages;

166.1    The value of Café Al Dente;

166.2    Interest;

166.3    Costs;

166.4    Indebtedness incurred;

166.5    Expenses incurred;

166.6    A reasonable legal fee, (42 U.S.C. 1988(b);

166.7    Anxiety;

166.8    Shock

166.9    Emotional distress,

166.10  Disbursements;

166.11  Costs;

166.12 Punitive damages for the willful, wanton, and malicious conduct of the non-corporate defendants;

166.13  Loss of Goodwill;

166.14  Lost earnings;

166.15  Lost profits;

166. 16 Loss of enjoyment of business and life;

166.17  Loss of business opportunities;

166.18  Loss of income.

166.19 Deprivation of life, liberty and property, as secured by the 14th Amendment.

167.     Pursuant to the conspiracy to "shut down" Café Al Dente, at 2 Spring Street, Frederick P. Ippolito facilitated the filing of the "false, and concocted" emergency safeguard notifications, dated August 13, 2013 and September 11, 2013.

168.     Frederick P. Ippolito misrepresented the findings of the Health Department inspection of July 29, 2013, concealing that the Nassau County Department of Health gave Café Al Dente its "highest rating."

169.     Upon information in furtherance of the conspiracy to "shut down" Café Al Dente, Frederick P. Ippolito facilitated the suppression, and concealment, of the Certificates of Occupancy, Building permits, plumbing approvals, electrical approvals, approved plans, applications, and other documents, pertaining to 2 Spring Street, Section 27, Block 44, Lot 74.

WHEREFORE, the Plaintiffs seek damages in a sum of money that will justly and fairly compensate the Plaintiffs for all damages suffered by Plaintiffs, together with interest, cost and disbursements, and a reasonable attorney fee, pursuant to 42 U.S.C. 1988(b); further, the Plaintiffs seek "punitive damages", in an amount to be determined by the Jury, together with such other, and further relief as the Court deems just and proper.

JOHN W. PALMER
523 Willis Avenue
Mineola, New York 11771
(516) 747-0022
johnwpalmer@msn.com

28